United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD HENRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CONTRA COSTA DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>　　　　Defendant. | Case No. 23-cv-04552-JSC<br><br>**ORDER (1) DENYING MOTION TO RECUSE AND (2) DISMISSING THE COMPLAINT**<br><br>Re: Dkt. Nos., 1, 13 |

Ronald Henry challenges California's attempt to enforce his past due child support, including by suspending his license and by levying his bank account. Henry argues 42 U.S.C. § 666(e) does not authorize these actions, so state actors exceeded their statutory authority. The Court granted Plaintiff's request to proceed *in forma pauperis* and now reviews the complaint pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff also moves for recusal of this Court. (Dkt. No. 13.)[1] After carefully considering Plaintiff's submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES Plaintiff's motion for recusal and DISMISSES the complaint for failure to state a claim, but with leave to amend. Any amended complaint must be filed by **January 5, 2024.**

## BACKGROUND

**A. Complaint Allegations**

Plaintiff owes over $90,000.00 in child support for his son who turned 18 on June 11, 2008. (Dkt. No. 1 at 1, 51.) He alleges "violations of Title IV-D of the Social Act [42 U.S.C. § 666], by Defendant Contra Costa County Department of Child Support Services DCSS[.]" (*Id.* at

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2.) Plaintiff believes DCSS "has been and *is* abusing its *limited* federal grant of authority in executing California's Child Support Enforcement Program," and challenges the authority of the DCSS to enforce his child support order including the suspension of his driver's license and a bank levy.  (*Id.* at 6.)

According to the documents attached to Plaintiff's complaint, his driver's license has been suspended since December 20, 2012.  (*Id.* at 37.)  On February 5, 2015, Plaintiff failed to appear at a hearing for driving with a suspended license.  (*Id.*)  In 2017, Plaintiff contacted "the Director of the Department of Motor Vehicles advising [them] that the suspension of his driving privilege was in violation of his due process rights and cited case law in support of that contention."  (*Id.* at 6.)  The DMV's response stated it "was not inclined to lift the license suspension[.]"  (*Id.*)

Plaintiff seeks an injunction barring DCSS from enforcing California's child support laws under the authority of 42 U.S.C. § 666.  (*Id.* at 1.)  He also seeks two declaratory judgments: (1) DCSS's enforcement actions against him 15 years after his son was last eligible for child support are outside the scope of its authority and thus unconstitutional as applied; and (2) DCSS's actions "violate the privileges and immunities guarantee of the California Constitution[.]"  (*Id.* at 13.)  Plaintiff seeks 15 million dollars "in compensatory and punitive damages from DCSS for exceeding its limited grant of authority when it knew or should have known" it had "no authority to act against him after June 11, 2008 when there was no child to 'support and maintain.'"  (*Id.* at 18.)  Plaintiff also demands the refund of "any monies illegally taken since then[,]" which according to his Complaint is 99 cents.  (*Id*. at 6.)

**B. Procedural Background**

Plaintiff filed the current action on September 5, 2023.  (Dkt. No. 1.)  He filed a similar action in 2011.  *See Henry v. Alaska Dept. of Revenue Child Support Services Div.*, No. 3:11-cv-03255-JSC, 2011 WL 6014657 (N.D. Cal. Dec. 1, 2011).  In the 2011 action, Plaintiff asserted: (1) a constitutional challenge to a state law and 42 U.S.C. § 666, the latter of which prohibits issuing passports to persons in arrears on child support payments, and (2) a constitutional challenge to California's suspension of Plaintiff's commercial driver's license for failing to make child support payments as ordered by the Alaska Superior Court.  As the Court noted in its 2011 order

2

dismissing the state of Alaska and staying the claims against the state of California: "The gravamen of Plaintiff's complaint is that because his son is no longer a minor it is unconstitutional to require Plaintiff to suffer any consequences from his failure to pay his past child support obligations." *Henry v. Alaska*, 2011 WL 6014657 at *2. The Court dismissed the case without prejudice at Plaintiff's request because there was ongoing state litigation. *Henry v. California Dept. of Child Support Services*, No. 11-cv-03255-JSC, 2012 WL 1965860, at *2 (N. D. Cal. May 31, 2012). Before dismissing the case, the Court noted the theory underpinning Plaintiff's action was "novel and defie[d] common sense." *Henry v. Alaska*, 2012 WL 1965860, at *3.

## MOTION TO RECUSE

Plaintiff moves to disqualify the Court under 28 U.S.C. § 455. (Dkt. No. 13.) "[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as [s]he does to recuse when the law and facts require." *Clemens v. U.S. Dist. Court for Cent. Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (internal citation and quotation marks omitted). "Since a federal judge is presumed to be impartial, the party seeking disqualification bears a substantial burden to show that the judge is biased." *Torres v. Chrysler Fin. Co.,* No. C-07-00915-JW, 2007 WL 3165665, at *1 (N. D. Cal. Oct. 25, 2007); *see also Sivak v. Hardison*, 658 F.3d 898, 924 (9th Cir. 2011) ("We presume that Judge Newhouse was impartial because he was a judicial officer.").

Plaintiff cites two main reasons for disqualification. First, "of primary concern" is "Plaintiff's choice to *not* proceed before a Magistrate Judge," which Plaintiff believes has been "disregarded." (Dkt. No. 13 at 2.) While Plaintiff is correct, this judge was formerly a Magistrate Judge; President Biden nominated Judge Corley to be an Article III District Court Judge, which the Senate confirmed on March 17, 2022. *See* "About District Judge Jacqueline Scott Corley," United States District Court: Northern District of California, https://www.cand.uscourts.gov/judges/corley-jacqueline-scott-jsc/; *see also* "San Francisco Courthouse: Article III Judges," United States District Court: Northern District of California, https://www.cand.uscourts.gov/judges/ (listing "Jacqueline Scott Corley, District Judge" under "Article III Judges" for the San Francisco Courthouse). So, no consent is required.

3

Second, Plaintiff asserts recusal is warranted because "during the prior case[,] Judge Corley demonstrated bias toward him and appears to have been advocating from the bench." (Dkt. No. 13 at 2.) Specifically, Plaintiff remonstrates the Court's statement "Plaintiff's theory is novel and defies common sense," *Henry v. Alaska*, 2011 WL 6014657 at *3, because "[o]ne would presume this to be an argument advanced by Plaintiff's adversary during litigation and not by a neutral trier of fact." (*Id.* at 3.) He feels this statement is "particularly prejudicial and insulting." (*Id.* at 4.) Plaintiff asserts this was a "personal (as opposed to *legal*) opinion" which "indicates to the Plaintiff that she is not competent to hear this case and that she is likely to adjudicate it with this same prejudice and bias." (*Id.*)

Plaintiff has identified no facts indicating the Court has any financial or personal interest in this proceeding. *See Johnson v. Barr*, 79 F.4th 996, 1007 (9th Cir. 2023) ("To prevail on a motion to disqualify a judge, the party filing the motion must show extrajudicial bias or prejudice."). Disagreeing with a judge's legal ruling is insufficient for recusal under 28 U.S.C. § 455. *See United States v. Sibla*, 624 F.2d 864, 869 (9th Cir. 1980) ("Provisions of section 455(a) & (b)(1) require recusal only if the bias or prejudice is directed against a party and stems from an extrajudicial source" and finding a judge need not excuse himself after the judge concluded a particular legal strategy was "meritless" and "legally frivolous"). The Court's statement that Plaintiff's claim defies common sense does not evidence bias; it reflects analysis of Plaintiff's contention that a parent can avoid paying child support merely by refusing to pay until his child reaches the age of majority.

Accordingly, Plaintiff's motion for recusal is DENIED.

## 28 U.S. CODE § 1915 ANALYSIS

### I.     LEGAL STANDARD

Under 28 U.S.C. § 1915, the Court has a continuing duty to dismiss any case in which a party seeks leave to proceed *in forma pauperis* if the Court determines the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2).

4

When a plaintiff representing himself files a complaint, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## II. DISCUSSION

The Complaint fails to state a claim on which relief may be granted because (1) there is no private right of action under 42 U.S.C. § 666, (2) even so, DCSS's actions are authorized by statute, (3) any alleged constitutional challenges fail, (4) as do claims brought under the Administrative Procedures Act.

### A. Merits

#### 1. No Private Right of Action

To the extent Plaintiff attempts to bring his claim directly under § 666, the statute does not contain a private right of action allowing him to do so. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citations omitted). Thus, courts interpret statutes "to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citations omitted).

There is no private right of action under the specific provision Plaintiff challenges. Plaintiff specifically cites 42 U.S.C. § 666(e), which defines "overdue support" and does not provide a private right of action.

Even looking at the entirety of 42 U.S.C. § 666, no provision explicitly creates a private right of action or suggests an intent to do so. This conclusion is supported by the lack of any general private right of action for the overarching statutory scheme, Title IV-D. *Blessing v. Freestone*, 520 U.S. 329, 330 (1997). Although the Supreme Court did "not foreclose the possibility that some Title IV-D provisions give rise to individual rights," *id.*, nothing in the statue at issue suggests the intent to do so. *See* 42 U.S.C. § 666.

Furthermore, 42 U.S.C. § 666 is directed at states and their agencies because it requires "statutorily prescribed procedures to improve effectiveness of child support enforcement." 42 U.S.C. § 666(a). Indeed, the statute does not mention individuals; instead, it promulgates

1  prerequisites for states to receive funding, including requiring states to enforce child support
2  judgments. *See id.* at (a). So, no private right of action exists under 42 U.S.C. § 666. *See also*
3  *Mosier v. Att'y Gen. of Texas*, 2015 WL 417984, at *3 (W.D. Ark. Jan. 30, 2015) (finding no
4  private right of action under 42 U.S.C. § 666).

5  Accordingly, 42 U.S.C. § 666 does not create a private right of action which alone bars
6  Plaintiff's claims.

### 2. DCSS Was Acting within Statutory Authority

Plaintiff's central argument is that the DCSS's actions are not authorized by 42 U.S.C. § 666(e) or any California statutes. However, neither the statute's plain language nor case law supports his argument because DCSS's actions are authorized by the plain language of the statutes.

To interpret the meaning of a statute, courts "begin by determining 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Dept. of Human Services, Division of Vocational Rehabilitation, Hoopono-Services for the Blind v. U.S. Dept. of Edu., Rehabilitation Services Admin.*, 46 F.4th 1148, 1154 (9th Cir. 2022) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). The language in 42 U.S.C. § 666 has a plain and unambiguous meaning. The statute allows for the collection of overdue support "owed to or on behalf of a child who is not a minor child." 42 U.S.C. § 666(e). Therefore, Plaintiff's arguments to the contrary are foreclosed by the unambiguous plain language of the statute.

Plaintiff also argues DCSS is defying California statutes because there are "statutory limitations found within the California Family Code," which Plaintiff insists DCSS has exceeded. (Dkt. No.1 at 10-11.) These limitations derive from the definition of "current support" and "child support payments[,]" which Plaintiff again contests because his son is now an adult. (*Id.*)

However, Plaintiff has not pled any allegations indicating DCSS has exceeded its statutory authority; to the contrary, Plaintiff's allegations indicate DCSS is acting in accordance with California statutes. California law provides: "An order for child support . . . continues in effect until the order (1) is terminated by the court or (2) terminates by operation of law." Cal. Fam.

6

1  Code § 3601. So, contrary to Plaintiff's argument, the court order requiring him to pay child
2  support did not terminate automatically when his son turned 18. This result is reinforced by a
3  California statute specifying that "[i]f a parent has been ordered to make payments for the support
4  of a minor child, an action to recover an arrearage in those payments may be maintained at any
5  time within the period otherwise specified for the enforcement of such a judgment,
6  notwithstanding the fact that the child has attained the age of 18 years." Cal. Fam. Code § 4503.
7  Also, California law provides for suspending one's driver's license, Cal. Fam. Code § 17520, and
8  withholding money from one's bank account. Cal. Fam. Code § 17450 et seq.
9  Accordingly, DCSS's actions are within federal and California state statutory authority.

### 3.  Any Alleged Constitutional Challenges Fail

#### a.  Federal Constitutional Claims

Construing the Complaint broadly to allege Fourth Amendment and Due Process violations, Plaintiff's arguments still fail. (*See* Dkt. No 1. at 6 (claiming California has violated Plaintiff's Fourth Amendment rights and Plaintiff "mailed a letter to the Department of Motor Vehicles ("DMV") advising that the suspension of his driving privilege was in violation of his due process rights.").)

"To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Enforcing child support orders implicates important state interests. *See Matter of Reynolds*, 726 F.2d 1420, 1423 (9th Cir. 1984) ("The obligation of parents to support their children is a matter of paramount social concern."). Plaintiff alleges he owes past-due child support pursuant to a valid court order. (Dkt. No. 1 at 44.) So, revoking Plaintiff's driver's license is reasonable given the "paramount" state interest in enforcing child support orders. *See e.g., Franceschi v. Yee*, 887 F.3d 927, 935-936 (9th Cir. 2018) (revoking a driver's license for "major" tax delinquency). Accordingly, any Fourth Amendment claims must be dismissed for failure to state a claim.

Construing the Complaint liberally, Plaintiff alleges a substantive due process challenge to DCSS's enforcement actions—asserting that because DCSS has exceeded its statutory authority, its action is not "rationally related to a legitimate government purpose." *Matsuda v. City & Cnty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) ("In evaluating a substantive due process claim . . . state action which neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process only if the action is not rationally related to a legitimate governmental purpose."). Collecting overdue child support payments is rationally related to the government interest in supporting children financially because collecting such payments incentivizes timely child support payments. Further, as explained above, Plaintiff has not alleged facts that plausibly support an inference DCSS has exceeded its statutory authority. Therefore, for the same reasons this Court noted in the 2011 action, Plaintiff's substantive due process claims are dismissed for failure to state a claim.

### b. California Constitutional Claims

Plaintiff seeks a declaratory judgment that DCSS violated "the privileges and immunities guarantee of the California Constitution (Article 7) by unreasonably interfering with his right to pursue and obtain a commercial driver's license necessary for his chosen occupation and violates the due process guarantee of the California Constitution by unreasonably interfering with Plaintiff's right to pursue a commercial driver's license." (Dkt. No. 1 at 13-14).

Article I, Section 7 of the California Constitution[2] states: "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked." Cal. Const. Art. I, § 7(b). California courts have held this provision is "governed by the same standards as those prescribed by the Fourteenth Amendment of the federal Constitution." *Gray v. Whitmore*, 17 Cal. App. 3d 1, 20 (Ct. App. 1971). "Under privileges and immunities jurisprudence, legislation that favors one class of citizens over another does not violate the clause unless the classification of

---

[2] Plaintiff cites "Article 7" of the California Constitution. (Dkt. No. 1 at 13.) However, Article 7 of the California Constitution is titled "Public Officers and Employees" and appears unrelated to Plaintiff's complaints. So, this memo assumes Plaintiff intended to reference Article I § 7 of the California Constitution, which does discuss "privileges and immunities."

citizens is unreasonable and arbitrary." *City & Cnty. of San Francisco v. Flying Dutchman Park*, 122 Cal. App. 4th 74, 87 (2004). Under California law, the suspension of Plaintiff's commercial driver's license was neither unreasonable nor arbitrary. *See Tolces v. Trask*, 76 Cal. App. 4th 285, 291 (1999) (holding the suspension of a driver's license due to overdue child support payments "is rationally related to a legitimate government purpose"). So, Plaintiff fails to state a viable cause of action as to the privileges and immunities clause of the California constitution. Plaintiff's due process claims under the California constitution also fail for the same reasons his federal due process claims fail.

So, Plaintiff has failed to state a claim for which relief can be granted under either the federal or California constitutions. Accordingly, no declaratory judgment is warranted.

### 4. Administrative Procedure Act

Plaintiff's complaint also accuses the DCSS of acting "arbirar[ily] and capricious[ly]." (Dkt. No. 1 at 3.) Insofar as Plaintiff attempts to raise claims under the Administrative Procedure Act ("APA"), these claims must be dismissed as the APA only applies to federal agencies. *See Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999) (citing *Gilliam v. Miller*, 973 F.2d 760, 764 (9th Cir. 1992)). Therefore, any claims under the APA are dismissed.

### 5. Leave to amend

"Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963) (cleaned up). Moreover, courts grant leave to amend liberally, particularly when the plaintiff represents themselves without the assistance of a lawyer. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Plaintiff, a non-lawyer, is representing himself. (Dkt. No. 1.) As this is the first Order addressing his complaint, the Court grants leave to amend.

### 6. CONCLUSION

For the reasons stated above, Plaintiff's complaint is DISMISSED with leave to amend. (Dkt. No. 1.) If Plaintiff believes he can correct the defects identified in this Order, he may file an

9

amended complaint on or before January 5, 2024.  If no amended complaint is filed by that date, judgment will be entered against Plaintiff.

**IT IS SO ORDERED.**

This Order disposes of Dkt. Nos. 1, and 13.

Dated: December 8, 2023

JACQUELINE SCOTT CORLEY
United States District Judge